Stefano Riznyk, Esq.   SBN 135688
Madeline Baker, Esq.  SBN 336702
**SAN DIEGO BIZ LAW APC**
4225 Executive Square, Suite 600
La Jolla, CA 92037
Telephone: (619) 793-4827
Facsimile:  (310) 388-5933

Attorneys for Plaintiff, LEONARD NORMAN HOAR V

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

LEONARD NORMAN HOAR V, an individual,

     Plaintiff,

v.

SO-CAL DOMINOIDS, INC., a California corporation; and DOES 1 through 10, inclusive,

     Defendants.

Case No: **'21 CV 1486 W    BLM**

**VERIFIED COMPLAINT FOR:**

**(1) VIOLATION OF FAIR LABOR STANDARDS ACT, 29 U.S.C. § 206;**
**(2) VIOLATION OF CAL. LAB. CODE §§ 1194, 1197;**
**(3) VIOLATION OF FAIR LABOR STANDARDS ACT, 29 U.S.C. § 207;**
**(4) VIOLATION OF CAL. LAB. CODE §§ 510, 558;**
**(5) VIOLATION OF CAL. LAB. CODE §§ 226.7, 512, 558;**
**(6) VIOLATION OF CAL. LAB. CODE § 226.7, 512, 558;**
**(7) VIOLATION OF CAL. LAB. CODE § 226;**
**(8) VIOLATION OF CAL. BUS. & PROF. CODE § 17200, ET. SEQ.;**
**(9) HOSTILE WORK ENVIRONMENT;**
**(10) VIOLATION OF 29 U.S.C. § 654;**
**(11) VIOLATION OF CAL. LAB. CODE §§ 1391, 1392 AND CAL. EDUCATION CODE §§ 49112, 49116;**
**(12) RETALIATION IN VIOLATION OF PUBLIC POLICY;**

*San Diego Biz Law, APC*
*4225 Executive Square, 6th Floor*
*La Jolla, CA 92037*
*Voice: 619.793.4827 / Fax 310.388.5933*

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

**(13) CONSTRUCTIVE TERMINATION;**
**(14) VIOLATION OF CAL. LAB. CODE §§ 201, 202;**
**(15) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**
**(16) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**DEMAND FOR JURY TRIAL**

Plaintiff, LEONARD NORMAN HOAR V, hereby alleges the following as against all Defendants:

## PARTIES

1. Plaintiff LEONARD NORMAN HOAR V (hereinafter "Plaintiff" or "HOAR") is and at all times herein mentioned, an individual residing in the county of San Diego, State of California.

2. Plaintiff is informed and believes, and thereon alleges that Defendant SO-CAL DOMINOIDS INC. (hereinafter "Defendant" or "DOMINOIDS") at all times mentioned herein is a California corporation conducting business in and under the laws of the state of California with entity location address commonly known as 6029 Bristol Parkway, Suite 200, Culver City, California 90230.

3. The true and correct names of Defendants named herein as DOES 1 through 10, inclusive, whether individual, corporate, associate or otherwise are unknown to Plaintiff, who therefore sues said Defendants by fictitious names, and when the same have been ascertained, Plaintiff will amend his Complaint to allege their true names and capacities. Plaintiff is informed and believes, and thereon alleges, that each Defendant designated herein as a DOE Defendant

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

was liable at the time of the incidents in question, and that each of the DOE Defendants is legally responsible in some manner for the events and happenings herein referred to and caused the injuries and damages to Plaintiff as herein alleged.

4. At all times herein mentioned, the Defendants, and each of them, were agents, servants, or employees of any co-defendants, and acting within the scope and course of said agency and/or with the permission and consent of said co-defendants.

## JURISDICTION AND VENUE

5. Jurisdiction exists because this Court has federal question jurisdiction over the alleged action under 28 U.S.C. § 1331, which provides that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. This court additionally has jurisdiction under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, which grants federal courts jurisdiction in order to restrain violations of withheld minimum wage payments or overtime compensation. This Court further has supplemental jurisdiction over the subject matter of Plaintiff's California state law claims, pursuant to 28 U.S.C. § 1367(a), because they are so related to the FLSA claims as to form part of the same case or controversy.

6. Venue is proper under 28 U.S.C. § 1391(b)(1), which provides that "a civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," because all Defendants reside or operate in the State of California and in the Southern District of California.

## FACTS OF THE CASE

7. Plaintiff HOAR began working for Defendant DOMINOIDS on or about

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

November 16, 2015: the day after Plaintiff's sixteenth birthday.

8.   Defendant DOMINOIDS is a franchisee of Domino's Pizza which owns several Domino's Pizza locations throughout Southern California. DOMINOIDS is a California corporation with its headquarters in Culver City, California.

9.   At the time Plaintiff was hired, Plaintiff was only sixteen (16) years old and was enrolled in high school. Plaintiff emanated from a family of six (6), wherein Plaintiff's father, who was a delivery driver for DOMINOIDS, was the sole provider of income in Plaintiff's household.

10.  Despite the fact that Plaintiff was only sixteen (16) years old and a full-time student, Plaintiff sought out employment in order to assist in supporting his family.

11.  For a majority of the course of Plaintiff's employment with Defendant DOMINOIDS, and during the applicable limitations period, Plaintiff was a minor.

12.  During Plaintiff's employment, Plaintiff was required to work in excess of eight (8) hours per day, and more than forty-eight (48) hours per week. Plaintiff was constantly instructed to work past ten (10) p.m., and even occasionally past two (2) a.m., with no regard for Plaintiff's high school schedule. This arduous schedule created a substantial hardship for Plaintiff. Plaintiff was an athlete who sought to obtain a scholarship so that he could attend a university, as Plaintiff's family did not have the financial means to afford to send Plaintiff to college without a scholarship. Unfortunately, Plaintiff's scholastic dreams were shattered as a direct and proximate cause of Plaintiff's employment with Defendant DOMINOIDS.

13.  After attempting day after day to reconcile the unreasonable schedule Plaintiff was forced to work at Defendant DOMINOIDS, Plaintiff finally requested a

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

transfer to a different DOMINOIDS location.

14. Plaintiff's schoolwork suffered immensely because Defendant DOMINOIDS forced Plaintiff to work unreasonably long hours and completely disregarded the fact Plaintiff was a minor attending high school and attempting to focus on his education. Due to his demanding work schedule and Defendant DOMINOIDS' utter disregard for Plaintiff's school obligations, Plaintiff was unable to complete his schoolwork adequately, resulting in Plaintiff's inability to obtain a scholarship: one which Plaintiff would have otherwise inevitably obtained had Defendant DOMINOIDS provided Plaintiff sufficient time to dedicate toward his studies.

15. Plaintiff is now twenty-one (21) years old. Despite the fact that most young adults of Plaintiff's age are enrolled in college, Plaintiff has been unable to attend college or obtain a scholarship due to the years Plaintiff wasted working for Defendant DOMINOIDS, which promised Plaintiff a thriving career and flexible work hours so that Plaintiff could focus on his studies.

16. During Plaintiff's tenure at DOMINOIDS, not only were his scholastic goals impeded, but Plaintiff's health was also placed at risk on several occasions because Plaintiff was forced to work with expired, bacteria-laden, decomposing food.

17. In order to save money and reduce food waste, Defendant DOMINOIDS instructed its employees to use moldy dough, cornmeal, and vegetables, mixing the decomposing vegetables with fresh vegetables to create the appearance that such vegetables were fresh.

18. This horrendous and unsanitary practice resulted in Plaintiff, as well as other employees, touching and cooking moldy, expired ingredients, thereby exposing themselves to the hazards and diseases correlated with expired and decomposed/decomposing food.

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

19. At no time did Defendant DOMINOIDS provide Plaintiff with training or education about how to work with moldy and expiring food. As a result, Defendant DOMINOIDS placed the health and safety of Plaintiff, as well as other employees and customers, at risk through DOMINOIDS' avarice, and for the sole financial benefit of Defendant DOMINOIDS by reducing food waste.

20. On or about December of 2016, Mr. Donovan Keener, the manager who hired Plaintiff, contacted Plaintiff with details about an orientation meeting in Rancho Peñasquitos, California. This orientation lasted approximately three (3) hours, only two (2) of which Plaintiff was compensated for. An entire half of the presentation was dedicated to promoting DOMINOIDS and potential career growth within the company.

21. The latter part of the orientation was dedicated to illustrating basic information about the nature of the work Plaintiff was to perform. Following the presentation, new employees were provided less than thirty (30) minutes to review a voluminous number of documents, including a contract for employment and other employment-related paperwork.

22. Although Plaintiff was compensated for only two (2) of the three (3) hours he attended the orientation, as a young and enthusiastic worker, Plaintiff did not notice the shortage on his paystubs. Plaintiff, rather, was thrilled to be employed and possess the ability to assist his family financially. When Plaintiff finally discovered he was not compensated for all of his time spent at the orientation, Plaintiff assumed it was most likely too late to complain. Plaintiff further did not want to potentially jeopardize his employment over one (1) hour of missing pay. Little did Plaintiff know, this would not be the only hour Plaintiff would be denied compensation while employed at Defendant DOMINOIDS.

23. Plaintiff began his first day of employment approximately one (1) week after

the orientation. On his first, day, Plaintiff worked a (two) 2-hour shift at the Imperial Beach DOMINOIDS location, which operated without a manager. This lack of leadership provided Plaintiff with extremely brief shifts and failed to afford Plaintiff any adequate training. At sixteen (16) years old, Plaintiff was required to work with extremely hot ovens and sharp knives without proper training.

24. Due to this lack of proper training, there were several occasions on which Plaintiff would accidentally cut himself while using sharp knives. On such occasions, Plaintiff was required to go to the nearest convenience store to purchase bandages, as Defendant DOMINOIDS did not even possess a first aid kit.

25. Plaintiff was additionally made aware of Defendant DOMINOIDS' peculiar policy for rest periods: the (ten) 10-minute rest period was absolutely non-existent and further, went against the restaurant's "culture."

26. Employees' (thirty) 30-minute meal breaks consisted of employees "clocking out" while continuing to work without compensation, as Defendant DOMINOIDS would not hire sufficient staff to cover employees' breaks.

27. Defendant DOMINOIDS failed to provide employees time off work when employees were sick, regardless of how much notice such employees provided. Should an employee ever take a sick day, the employee was harshly reprimanded. Defendant DOMINOIDS failed to consider that in allowing employees who were ill, and thus afflicted with bacteria or viruses, to work with food, could in turn cause these viruses to spread to Defendant DOMINOIDS' customers and the public.

28. Plaintiff was routinely forced to work overtime, regardless of the fact Plaintiff often had class in the morning and was required to be at school at 7:10 a.m. the next day. Such overtime often involved remaining at Defendant DOMINOIDS

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

past ten (10) p.m., and on occasion, even until one (1) or two (2) a.m. Plaintiff consistently ended his shift between eleven (11) p.m. and twelve (12) a.m. When Plaintiff finally returned home after his shift, Plaintiff was burdened with hours of homework. These late nights often resulted in Plaintiff sleeping in past first or second period and missing a significant amount of classes.

29. Plaintiff was eventually forced to transfer to another DOMINOIDS location, as Plaintiff could not reconcile the forced overtime hours with his school schedule.

30. After transferring from the Imperial Beach location to the Palm Avenue location, Plaintiff, a hardworking and dedicated employee, worked his way up to obtain the title of Assistant Manager.

31. Shortly after, however, Plaintiff became disillusioned with his promotion, as he became responsible for the work of the lead managers who consistently failed to perform their own assigned duties.

32. Donovan Keener, one of the managers at the Palm Avenue location, informed Plaintiff that if Plaintiff wished to receive bonuses, Plaintiff was required to clock out early to demonstrate to the owners that the store expended fewer labor hours than were actually utilized. Mr. Keener further explained to Plaintiff how to manipulate the delivery drivers' performance reviews to create the appearance that such drivers performed more superior performances than they actually performed. Mr. Keener had never informed Plaintiff that Plaintiff was entitled to rest periods, nor did Mr. Keener instruct Plaintiff to provide rest periods to other employees. Mr. Keener additionally informed Plaintiff that employees were only allowed to take meal breaks if such employees remained available to return to work if required, *without clocking back in.* This was Defendant DOMINOIDS' method of circumventing California labor laws by forcing employees to work during uncompensated meal breaks.

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

33. Due to these abysmal and illegal working conditions, Plaintiff requested a transfer to a different DOMINOIDS location. After several months of waiting for a transfer, Plaintiff was transferred to the National City location.

34. Unfortunately, to Plaintiff's great disappointment, the National City location exhibited the same deficiencies as the other DOMINOIDS locations. Just as in the other locations, Plaintiff, as well as other employees at the National City location, received no meal breaks or rest periods and was forced to work uncompensated overtime hours.

35. On several occasions while working at the National City location, Plaintiff encountered situations wherein the general manager, Shatani Upton, and the area manager, Mark Herman, made Plaintiff feel extremely uncomfortable through their inappropriate sexual conversations and conduct.

36. Mr. Herman consistently referred to Plaintiff as Mr. Herman's "Domin-HOE" because, according to Mr. Herman, Mr. Herman could rely on Plaintiff to cover shifts at any of Mr. Herman's locations at any time. Despite the derogatory nickname, this was true: Plaintiff, as a dedicated and hardworking employee, was always on-call and often dropped whatever he was doing to pick up shifts when Mr. Herman required Plaintiff's assistance.

37. On one occasion, Plaintiff, Ms. Upton, and Mr. Herman were confined on a small food truck together. Mr. Herman repeatedly made comments regarding the bodies of female customers and bystanders. These comments included: "fuXX the things I would do to her," and "damn she has a fat aXX." This made Plaintiff extremely uncomfortable, as Mr. Herman's comments were wildly disrespectful and inappropriate. These comments were further made by Mr. Herman while working at an event for veterans. At this event, many of the women Mr. Herman made such disrespectful and inappropriate comments about, had either served in the military, were on active duty, or had husbands

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

serving in the military. This conduct on the part of Mr. Herman, as Plaintiff's superior, appalled Plaintiff.

38. On another occasion, Mr. Herman and Ms. Upton made repeated jokes regarding Ms. Upton's "twerking problem" ("twerking" being a dance characterized by sexually suggestive motions [e.g.: rapid, repeated hip thrusts and shaking of the buttocks, especially while squatting]). Upon discussing Ms. Upton's "twerking problem," Ms. Upton then began "twerking" in the small trailer, directly in front of Plaintiff's face and groin area, yet again making Plaintiff extremely uncomfortable.

39. On yet another occasion, Plaintiff needed to end his shift shortly after the store's closing to attend to his girlfriend, who had been taken to the emergency room for a severe medical emergency. Plaintiff, however, was forced to remain at the store until all the duties required to close the store were complete, because the National City DOMINOIDS location was understaffed.

40. To further exacerbate Plaintiff's arduous circumstances, Plaintiff began receiving **unwarranted threats and harassment** from Ms. Upton. This harassment from one of Plaintiff's superiors became so severe that Plaintiff's severely detrimental **emotional state brought him to tears on a daily basis**.

41. Ms. Upton, however, was not the only employee at the National City DOMINOIDS who harassed Plaintiff. On one occasion, Plaintiff encountered a verbal altercation with another employee, who in turn, threatened Plaintiff's life. On this occasion, Plaintiff was cutting pizza when Ms. Upton instructed one of the delivery drivers to take over Plaintiff's job cutting pizza so Plaintiff could do something else. Ms. Upton provided this instruction to the delivery driver, but not Plaintiff which greatly exacerbated the miscommunication that ensued. When the delivery driver approached Plaintiff, the delivery driver cornered Plaintiff, physically bumping into Plaintiff's shoulder. When Plaintiff

requested the delivery driver "get off [him]," the delivery driver stated that he would "kill [Plaintiff]." The threats did not cease there, however, as the delivery driver later sent Plaintiff a photo of a gun via text message. This physical altercation and continued threats via text message made Plaintiff fear for his physical safety.

42. Due to these threats to Plaintiff's life, Plaintiff was transferred to the Euclid Avenue DOMINOIDS, a location with bulletproof glass, to protect Plaintiff from the death threats he received at the National City DOMINOIDS.

43. Shortly after, Defendant DOMNIOIDS yet again transferred Plaintiff, this time to the Marine Corps Recruit Depot ("MCRD") location. Ms. Rihanan, the general manager of the MCRD location, embarked on medical leave immediately upon Plaintiff's transfer.

44. Due to Ms. Rihanan's absence, Plaintiff was forced to take on Ms. Rihanan's managerial duties, yet at no time did Plaintiff receive a formal title, a promotion, or correlative compensation.

45. Defendant DOMINOIDS was at all times aware that Plaintiff was forced to take on these managerial duties, assuming the role of General Manager by workload, but not by compensation. Despite Defendant DOMINOIDS' awareness, Defendant DOMINOIDS failed to provide Plaintiff the additional compensation such managerial work merited.

46. Additionally, while exercising such managerial duties, the MCRD location received a (four) 4-star review. Per Defendant DOMINOIDS' company policy, obtaining this (four) 4-star review should have entitled Plaintiff to a $300 bonus, as Plaintiff was the acting manager of the MCRD location. Plaintiff however, received no such bonus.

47. Subsequently, Defendant DOMINOIDS unilaterally decided to transfer Plaintiff back to the National City location. Plaintiff politely refused, given the

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

fact that Ms. Upton, who had constantly harassed Plaintiff while Plaintiff was at the National City location previously, was still the National City location's acting manager. The employees at the National City location were additionally close friends with the employee who had threatened Plaintiff's life, therefore Plaintiff feared returning to the National City location would yet again place his life at risk.

48. In response to Plaintiff's refusal to return to the National City location, Defendant DOMINOIDS transferred Plaintiff to the Ocean Beach location. The Ocean Beach location, however, was approximately thirty (30) minutes from where Plaintiff resided, and therefore burdened Plaintiff with an arduous commute. Additionally, the Ocean Beach location did not offer Plaintiff any potential for career growth, as Plaintiff was the General Manager, albeit by title only, at the MCRD location, and transferring to the Ocean Beach location would demote Plaintiff and render Plaintiff unable to gain anything to supplement his career.

49. Mr. Herman, the area manager at the Ocean Beach DOMINOIDS, described the Ocean Beach location to Plaintiff as a "great place to work" because "there are always sexy bikini girls walking by the windows or coming in to order."

50. At the Ocean Beach location, Plaintiff routinely closed the store at five (5) a.m. and was required to be back at nine (9) a.m.: *only four (4) hours later*, to open.

51. Eventually, Plaintiff, burdened by the abuse and the mistreatment perpetrated by Defendant DOMINOIDS' management, was forced to resign.

52. In addition to the abusive practices described herein, at the time of his hire, Plaintiff was forced to download a texting application on his mobile device and was thereby required to be "on-call" and aware of the communications sent to this application twenty-four (24) hours a day, seven (7) days a week, with absolutely no consideration for Plaintiff's time off. During hours when

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

Plaintiff was not working, should Plaintiff fail to promptly respond to the group chat, Plaintiff would be admonished. Plaintiff would additionally be reprimanded should Plaintiff fail to report for a shift conveyed through the application, regardless of whether Plaintiff received adequate notice prior the shift's start. The time spent managing communications through this texting application as well as the additional duties required by the application were never compensated to Plaintiff.

53. Assistant Managers and Managers were further not compensated for attending bi-weekly meetings in Rancho Peñasquitos, which was a far commute for Plaintiff.

54. Plaintiff officially resigned in March 2020. Upon this constructive termination by Defendant DOMINOIDS, at no time was Plaintiff compensated the wages owed to him.

55. Plaintiff has accordingly filed and obtained a federal Right to Sue from the Equal Employment Opportunity Commission ("EEOC"). (Please see Plaintiff's Notice of Right to Sue Letter, attached as **Exhibit A** and incorporated by reference as though set forth in full.)

## FIRST CAUSE OF ACTION

### VIOLATION OF FAIR LABOR STANDARDS ACT, 29 U.S.C. § 206

### *Failure to Compensate Minimum Wage*

### (Against All Defendants)

56. Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

57. The Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et. seq.*, applied to Plaintiff's employment with Defendants at all times relevant herein.

58. Section 206 of the FLSA, 29 U.S.C. § 206(a)(1)(C), mandates that employers

are required to compensate all employees engaged in commerce, or in the production of goods for commerce, minimum wages for their work in an amount set by federal law. Section 218 of the FLSA, 29 U.S.C. § 218(a), provides that employers compensate such minimum wages as established by state law, should it be higher than the federal minimum. During the relevant time period for the events described herein, the federal minimum wage was $7.25.

59. "Hours Worked" is the time during which an employee is subject to the total control of the employer and includes all the time the employee is permitted to work, whether or not he or she is required to do so.

60. At all relevant times mentioned herein, Defendant DOMINOIDS knowingly failed to compensate Plaintiff for all hours worked. Plaintiff was never compensated for bi-weekly meetings in Rancho Peñasquitos that he was required to attend as an Assistant Manager, nor was Plaintiff compensated for time spent being "on-call" and maintaining the demands of the group chat Plaintiff was required to participate in.

61. Defendant DOMINOIDS failed to compensate Plaintiff minimum wage when Plaintiff was required to work off the clock, or when required to "clock-out" while continuing to work through meal breaks and/or rest periods in order for Defendant DOMINOIDS to maintain a record so as to create the appearance of complying with relevant labor laws, while essentially reaping the benefit of free labor.

62. Plaintiff was further not compensated for overtime hours worked while employed at Defendant DOMINOIDS, despite the fact that Plaintiff often remained on the clock in excess of eight (8) hours per day and forty (40) hours per week.

63. This failure to compensate Plaintiff minimum wage violates §§ 206 and 218 of

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

the FLSA.

64. This violation deprived Plaintiff of his right to be paid minimum wages earned as a result of Plaintiff's employment with Defendant DOMINOIDS.

65. As a result of Defendant DOMINOIDS' unlawful failure to compensate Plaintiff for non-overtime hours worked, Plaintiff has suffered and will continue to suffer damages, which are yet to be ascertained.

66. Accordingly, Plaintiff is entitled to recover minimum and straight time wage for all non-overtime hours worked for Defendants.

67. Under the FLSA, 29 U.S.C. § 260, Plaintiff is entitled to liquidated damages equal to the sum of uncompensated wages owed to Plaintiff by Defendant DOMINOIDS.

68. Plaintiff is entitled to recovery of all uncompensated wages in a sum to be shown according to proof.

## SECOND CAUSE OF ACTION

## VIOLATION OF CAL. LAB. CODE § 1194 and § 1197

### *Failure to Compensate Minimum Wage*

### (Against All Defendants)

69. Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

70. California Labor Code §§ 1194, 1197, and 1197.1 confirm an employer's obligation to pay minimum wage. Section 1197 provides that "[t]he minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful." Section 1194 directs that each employee is entitled to receive the "legal minimum wage" "[n]otwithstanding any agreement to work for a lesser wage." Section 1197.1, in part, identifies civil penalties to be assessed against

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

"[a]ny employer…who pays or causes to be paid to any employee a wage less than the minimum fixed by an order of the commission."

71. "Hours Worked" refers to the time during which an employee is subject to the total control of an employer; this includes all the time the employee is permitted to work, regardless of whether he or she is required to do so.

72. At all relevant times mentioned herein, Defendant DOMINOIDS knowingly failed to compensate Plaintiff for all hours worked. Plaintiff was never compensated for bi-weekly meetings in Rancho Peñasquitos that he was required to attend as an Assistant Manager, nor was Plaintiff compensated for time spent being "on-call" and maintaining the demands of the group chat Plaintiff was required to participate in.

73. Defendant DOMINOIDS failed to compensate Plaintiff minimum wage when Plaintiff was required to work off the clock, or when required to "clock-out" while continuing to work through meal breaks and/or rest periods in order for Defendant DOMINOIDS to maintain a record so as to create the appearance of complying with relevant labor laws, while essentially reaping the benefit of free labor.

74. Plaintiff was further not compensated for overtime hours worked while employed at Defendant DOMINOIDS, despite the fact that Plaintiff often remained on the clock in excess of eight (8) hours per day and forty (40) hours per week.

75. This failure to compensate Plaintiff minimum wage violates §§ 1194, 1197, and 1197.1.

76. This violation deprived Plaintiff of his right to be paid minimum wages earned as a result of Plaintiff's employment with Defendant DOMINOIDS.

77. As a result of Defendant DOMINOIDS' unlawful failure to compensate Plaintiff for non-overtime hours worked, Plaintiff has suffered and will

continue to suffer damages, which are yet to be ascertained.

78. By failing to keep accurate records as required by California Labor Code § 1174(d), Defendant DOMINOIDS made it difficult to calculate the full extent of the minimum wage compensation due to Plaintiff.

79. Pursuant to California Labor Code §1194.2, Plaintiff is entitled to liquidated damages for Defendant DOMINOIDS' failure to compensate Plaintiff minimum wage.

80. California Labor Code § 204 mandates that employers compensate their employees twice a month. Plaintiff did not receive full wages as required by law because Defendant DOMINOIDS systematically failed to and refused to compensate Plaintiff for all hours worked.

81. As a result of Defendant DOMINOIDS' conduct, Plaintiff was harmed.

82. Plaintiff is entitled to recover minimum and straight time wage for all non-overtime hours he worked for Defendants.

83. Accordingly, Plaintiff is entitled to recovery of all uncompensated wages in a sum to be shown according to proof, in addition to interest accruing thereon, and attorneys' fees pursuant to California Labor Code §§ 218.5 and 218.6.

84. Plaintiff further requests an award of civil penalties and other relief against Defendant DOMINOIDS according to proof at trial and within the jurisdictional limits of the Court.

## **THIRD CAUSE OF ACTION**

### **VIOLATION OF FAIR LABOR STANDARDS ACT, 29 U.S.C. § 207**

### *Maximum Hours*

### **(Against All Defendants)**

85. Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

this Cause of Action.

86. The Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq*., applied to Plaintiff's employment with Defendant DOMINOIDS at all times relevant herein.

87. Section 207 of the FLSA, 29 U.S.C. § 207(a)(1) prohibits employers from staffing employees in commerce or in the production of goods for commerce for a workweek longer than forty (40) hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate which is no less than one and one-half times the regular rate at which he is employed.

88. Throughout Plaintiff's employment with Defendant DOMINOIDS, Plaintiff was routinely forced to work weeks in excess of forty (40) hours per workweek without receiving the appropriate compensation as prescribed by the FLSA, 29 U.S.C. § 207(a)(1) of one-and-a-half-times Plaintiff's hourly rate.

89. Defendant DOMINOIDS consistently required Plaintiff to work off the clock or required Plaintiff to "clock-out" while continuing to work through meal breaks and/or rest periods in order for Defendant DOMINOIDS to maintain a record so as to create the appearance of complying with relevant labor laws, while essentially reaping the benefit of free labor.

90. This unlawful practice of Defendant DOMINOIDS resulted in Plaintiff working hours that substantially exceeded the (forty) 40-hour workweek under the FLSA. At no time was Plaintiff compensated for the unaccounted-for hours, nor was Plaintiff compensated at a rate no less than one and one-half times Plaintiff's regular hourly rate.

91. Plaintiff is informed and believes, and thereon alleges that requiring Plaintiff to work in excess of forty (40) hours per week without compensating Plaintiff for such hours exceeding the (forty) 40-hour workweek was the result of the

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

actions regularly practiced by Defendant DOMINOIDS.

92. Defendant DOMINOIDS approved, ordered, authorized, and/or ratified such conduct herein alleged with the intent to deprive Plaintiff of Plaintiff's full wages as required by the FLSA, so as to increase Defendant's profits.

93. As a result of Defendant's conduct, Plaintiff was harmed.

94. Under the FLSA, 29 U.S.C. § 260, Plaintiff is entitled to liquidated damages equal to the amount of uncompensated overtime wages owed to him by Defendant DOMINOIDS.

95. Plaintiff is entitled to recovery of all uncompensated wages in a sum to be shown according to proof.

## FOURTH CAUSE OF ACTION
### VIOLATION OF CAL. LAB. CODE § 510 AND § 558
### *Failure to Pay Overtime*
### (Against All Defendants)

96. Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

97. At all times relevant herein, Defendant DOMINOIDS was Plaintiff's employer. For approximately four (4) years, Plaintiff was employed as an Assistant Manager at Defendant DOMINOIDS.

98. California Labor Code § 510 and § 558, both generally and specifically, provide for a minimum payment of wages, regardless of the number of hours worked; plus one-and-a-half of an employee's regular rate of pay for all work over eight (8) hours in a work day and all work over forty (40) hours in a workweek; any work on the seventh consecutive day of any workweek, plus two (2) times the employees regular rate of pay for all work in excess of twelve

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

(12) hours in a work day or over eight (8) hours on the seventh day of any workweek.

99. Throughout the entire course of Plaintiff's employment, and during the applicable limitations period, Plaintiff performed work without being properly compensated overtime wages as required by California Labor Code § 510 and § 558.

100.   On several occasions, Plaintiff's supervisors required Plaintiff to "clock out" while continuing to work through meal breaks and/or rest periods in order for Defendant DOMINOIDS to maintain a record so as to create the appearance of complying with relevant labor laws, while essentially reaping the benefit of free labor.

101.   Plaintiff was further not compensated for overtime hours worked while employed at Defendant DOMINOIDS, despite the fact that Plaintiff often remained on the clock in excess of eight (8) hours per day and forty (40) hours per week.

102.   Prejudgment interest in any action brought to recover the nonpayment of wages at the rate specified by California Civil Code § 3289 is permitted by California Labor Code § 218.6. Any employer who violates any provision regulating the hours and days of work in any Industrial Welfare Commission work order shall be liable to its employees, and each of them, in an amount of $50 per unpaid employee for initial violations, and $100 per unpaid employee per pay period for each subsequent violation, in addition to any civil or criminal penalties provided by law pursuant to California Labor Code § 558(a).

103.   From November 2015 until March 2020, Plaintiff accrued approximately 1,942 overtime hours, for which Plaintiff has not been compensated at a rate of one-and-a-half times Plaintiff's hourly wage. At the time of Plaintiff's constructive termination, Plaintiff was compensated at an hourly rate of $14

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

per hour. Accordingly, Plaintiff is entitled to approximately $34,000 in uncompensated overtime wages.

104.   Plaintiff is informed, believes, and thereon alleges, that requiring Plaintiff to work in excess of eight (8) hours per day without compensating Plaintiff for the overtime at the proper rate was the direct and intentional result of the actions regularly practiced by Defendant DOMINOIDS.

105.   Defendant DOMINOIDS approved, ordered, authorized, and/or ratified said conduct herein alleged with the intent to deprive Plaintiff of his full wages as required by California law, so as to increase Defendant's profits.

106.   As a result of Defendant's conduct, Plaintiff was harmed.

107.   Plaintiff further requests an award of civil penalties and other relief against Defendant DOMINOIDS according to proof at trial and within the jurisdictional limits of the Court.

### FIFTH CAUSE OF ACTION
### VIOLATION OF CAL. LAB. CODE § 226.7, § 512, AND § 558
### *Meal Break Violations*
### (Against All Defendants)

108.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

109.   Throughout approximately four (4) years of employment with Defendant DOMINOIDS, Defendant DOMINOIDS failed to provide Plaintiff with mandated, off-duty, (thirty) 30-minute meal breaks before reaching the end of Plaintiff's fifth straight hour of work during Plaintiff's entire employment with Defendant DOMINOIDS. Defendant DOMINOIDS further failed to compensate Plaintiff an additional hour of compensation when Plaintiff did not

receive his mandated, off-duty, (thirty) 30-minute meal breaks. This failure violated California Labor Code §§ 226.7, 512, and 558.

110. On several occasions, Plaintiff's supervisors required Plaintiff to "clock out" while continuing to work through meal breaks and/or rest periods in order for Defendant DOMINOIDS to maintain a record so as to create the appearance of complying with relevant labor laws, while essentially reaping the benefit of free labor.

111. This unlawful practice of Defendant DOMINOIDS was Defendant's modus operandi, in that Defendant DOMINOIDS further instructed Plaintiff, as an Assistant Manager, to deny other employees meal breaks in the same manner.

112. As Defendant DOMINOIDS failed to compensate Plaintiff the additional hour of compensation when Plaintiff was not afforded meal breaks as required by California Labor Code §§ 226.7 and 558, Defendant DOMINOIDS did not furnish Plaintiff with accurate wage statements, as the wage statements Plaintiff received did not reflect all gross or net wages earned (Cal. Lab. Code § 226(a)(1)), all hours worked (Cal. Lab. Code § 226(a)(2)), net wages earned (Cal. Lab. Code § 226(a)(5)), or all applicable hourly rates and corresponding hours worked (Cal. Lab. Code § 226(a)(9)), among other deficiencies incorporated herein.

113. From November 2015 until March 2020, Plaintiff accrued approximately 1,000 missed meal breaks, for which Plaintiff has not been compensated for, each at one (1) hour of Plaintiff's regular hourly rate. At the time of Plaintiff's constructive termination, Plaintiff was compensated at an hourly rate of $14 per hour. Accordingly, Plaintiff is entitled to approximately $12,000 in uncompensated meal breaks not afforded to Plaintiff throughout the course of his employment.

114. As a result of Defendant DOMINOIDS' violation of California labor law,

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

Plaintiff is entitled to recover the additional hour of compensation for each meal break missed, as set forth by California Labor Code § 226.7.

115. As a result of Defendant's conduct, Plaintiff was harmed.

## SIXTH CAUSE OF ACTION

### VIOLATION OF CAL. LAB. CODE § 226.7, § 512, AND § 558

*Rest Period Violations*

**(Against All Defendants)**

116. Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

117. California Industrial Welfare Commission Wage Order 1-2001 provides that non-exempt employees are entitled to ten (10) minutes of paid rest time for every four (4) hours worked (or major fraction worked). Rest periods are defined as a "net" ten (10) minutes, meaning that the rest period does not begin until the worker has reached an area away from the work area that is appropriate for rest.

118. Under California Labor Code § 226.7 requires an additional hour's worth of pay for each day an employee is unlawfully denied a full, uninterrupted rest period. No employer shall require any employee to work during any rest period mandated by an applicable order of the Industrial Welfare Commission. If an employer fails to provide the employee with a rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one (1) additional hour of pay at the employee's regular rate of compensation for each workday the rest period is not provided.

119. Defendants DOMINOIDS failed to provide Plaintiff with a mandated (ten) 10-minute rest period when Plaintiff worked more than four (4) hours in a

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

shift, and two (2) (ten) 10-minute mandated rest periods when Plaintiff worked more than six (6) hours in a shift, during the entire period of Plaintiff's employment with Defendant DOMINOIDS.

120.   On several occasions, Plaintiff's supervisors required Plaintiff to "clock out" while continuing to work through meal breaks and/or rest periods in order for Defendant DOMINOIDS to maintain a record so as to create the appearance of complying with relevant labor laws, while essentially reaping the benefit of free labor.

121.   Defendants further failed to compensate Plaintiff an additional hour of pay when Plaintiff did not receive the mandated (ten) 10-minute rest period(s). This failure violated California Labor Code §§ 226.7, 512, and 558.

122.   As a result of Defendant DOMINOIDS' failure to provide Plaintiff with mandatory (ten) 10-minute rest periods, Plaintiff is entitled to recover the additional hour of compensation for each rest period missed, as set forth by California Labor Code § 226.7.

123.   As Defendant DOMINOIDS failed to compensate Plaintiff the additional hour of compensation when Plaintiff was not afforded rest periods as required by California Labor Code §§ 226.7 and 558, Defendant DOMINOIDS did not furnish Plaintiff with accurate wage statements, as the wage statements Plaintiff received did not reflect all gross or net wages earned (Cal. Lab. Code § 226(a)(1)), all hours worked (Cal. Lab. Code § 226(a)(2)), net wages earned (Cal. Lab. Code § 226(a)(5)), or all applicable hourly rates and corresponding hours worked (Cal. Lab. Code § 226(a)(9)), among other deficiencies incorporated herein.

124.   From November 2015 until March 2020, Plaintiff accrued approximately 1,000 missed rest periods, for which Plaintiff has not been compensated for, each at one (1) hour of Plaintiff's regular hourly rate. At the time of Plaintiff's

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

constructive termination, Plaintiff was compensated at an hourly rate of $14 per hour. Accordingly, Plaintiff is entitled to approximately $12,000 in uncompensated rest periods not afforded to Plaintiff throughout the course of his employment.

125.   As a result of Defendant's conduct, Plaintiff was harmed.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF CAL. LAB. CODE § 226**

***Unlawful Failure to Furnish Wage Statements***

**(Against All Defendants)**

126.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

127.   At all relevant times herein, Plaintiff was a non-exempt employee of Defendant DOMINOIDS under the laws of the State of California within the meaning of the Labor Code and Industrial Wage Order 2-2001.

128.   California Labor Code § 226(a) provides in part:

(a) An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are compensated by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is compensated on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is compensated, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

129.  California Labor Code § 1174 requires employers to maintain records containing the information specified in § 1174, including but not limited to employees' total hours worked, an accurate hourly rate, accurate computation of net wages, and when employees begin and end each work period.

130.  The "records" section of the applicable Wage Order provides as a standard of condition of labor that accurate records be maintained by the employer, including but not limited to the total hours worked in the payroll period and applicable rates of pay.

131.  California Labor Code § 226(e)(1) states: "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

132.  California Labor Code § 226(e)(2)(A) provides that an employee is deemed to suffer injury for purposes of Section 226(e) of the Labor Code if the employer fails to provide a wage statement. Furthermore, pursuant to California Labor Code § 226(e)(2)(B), an employee is deemed to suffer injury for purposes of Section 226(e) of the Labor Code if the employer fails to provide accurate and complete information as required by any one or more items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the items specified in Labor Code § 226(e)(2)(B)(i)-(iv).

133.  Through Defendant DOMINOIDS' conduct during the applicable statutory period, including but not limited to the conduct set forth herein, including that alleged on information and belief, Defendant DOMINOIDS knowingly and intentionally failed to provide accurate wage statements, reflecting, among other things, accurate gross wages earned, accurate methods of computation for net wages paid to Plaintiff, applicable employment tax deductions, and failed to maintain the records required by Labor Code §§ 226(a), 1174 and 1198.

134.  Defendant DOMINOIDS violated Labor Code § 226(a) by willfully failing to furnish Plaintiff with accurate, itemized wage statements showing the actual hours worked daily. When Defendant DOMINOIDS compensated Plaintiff, it did not account for the time Plaintiff was forced to work off the clock or for the meal breaks and/or rest periods Plaintiff missed.

135.  Plaintiff suffered injuries as a result of Defendant DOMINOIDS' intentional and knowing failure to provide to Plaintiff and maintain the writings required by Labor Code § 226(a), as set forth herein. Defendant DOMINOIDS' failure to provide and maintain accurate statements, as alleged herein, left Plaintiff, on information and belief, without the ability to know, understand and question the hours worked and wage earned and due.

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

136.  As a direct result of Defendant DOMINOIDS' violations as set forth hereinabove, Plaintiff has suffered substantial losses related to the use and enjoyment of such wages, as the result of Defendant DOMINODS' failure to maintain records in compliance with the Labor Code and Wage Order including but not limited to the expenses and attorney's fees and costs in seeking to compel Defendant DOMINOIDS to fully perform its obligation under state law, all to Plaintiff's damage in the amount according to proof at trial and within the jurisdictional limitations of this Court.

137.  Plaintiff seeks to recover in a civil action to the fullest extent permissible all available remedies including but not limited to all monies that Defendant DOMINOIDS should have lawfully paid, penalties, injunctive relief, interest, reasonable attorney's fees and costs of suit, and any other permitted remedies including those permitted pursuant to the Labor Code §§ 226 *et. seq.*, 1174, 1197, 1198 and California Code of Civil Procedure § 1021.5. The exact amount of the applicable penalties is an amount to be shown according to proof at trial and within the jurisdictional limits of the Court.

138.   Under California Labor Code § 226(e)(1), Plaintiff is entitled to liquidated damages for failure to provide accurate itemized wage statements of $50 for the initial pay period in which violation occurs and $100 in each subsequent period, not to exceed $4,000, in addition to attorney's fees and costs.

139.  Plaintiff is also entitled to injunctive relief to ensure compliance with this section, in compliance with California Labor Code § 226(h).

140.  As a result of Defendant's conduct, Plaintiff was harmed.

///

///

///

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

# EIGHTH CAUSE OF ACTION

## VIOLATION OF CAL. BUS. & PROF. CODE § 17200, ET. SEQ.

### *Unfair Business Practices*

### (Against All Defendants)

141.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

142.   California Business & Professions Code § 17200, *et. seq.* prohibits unlawful, unfair, or fraudulent business acts, as well as unfair, deceptive, untrue, or misleading advertising.

143.     Defendant DOMINOIDS is a "person" as defined under California Business § Professions Code § 17021, which defines "person" as any natural person, corporation, firm, partnership, *inter alia*.

144.   Defendant DOMINOIDS' conduct constitutes unfair business practices in violation of California Business & Professions Code § 17200, *et. seq.* in that Defendant DOMINOIDS prohibited Plaintiff from taking mandatory meal breaks and/or rest periods, failed to compensate Plaintiff minimum wage and overtime pay for hours worked in excess of eight (8) hours per day and forty (40) hours per week, and subjected Plaintiff to constant harassment from Plaintiff's superiors, in addition to harming Plaintiff.

145.     Each of the directors, officers and/or agents of Defendant DOMINOIDS are equally responsible for the acts of the others as set forth in California Business & Professions Code § 17095.

146.   Plaintiff is informed and believes, and thereon alleges that Defendant DOMINOIDS has intentionally and improperly failed to compensate Plaintiff for wages earned for periods of time worked. Defendant's failure to compensate such wages has placed Defendant DOMINOIDS in violation

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

of California Labor Code §§ 201and 1198, California Penal Code §§ 484 (larceny) and 532 (obtaining labor through false pretenses), IWC Wage Order No. 1-2001 (revised), and guidelines set forth by the Division of Labor Standards Enforcement and the Industrial Welfare Commission, in addition to the standard imposed by the United States Congress following enactment and subsequent amendment of the Fair Labor Standards Act (29 U.S.C. § 201 *et. seq.*).

147.    Defendant's failure to compensate Plaintiff with the proper wages owed to Plaintiff has resulted in Defendant DOMINOIDS under-reporting to federal and state authorities such wages earned by Plaintiff. As a result, Defendant DOMINOIDS has been under-paying state and federal taxes, unemployment premiums, Social Security, Medicare, and workers' compensation premiums, in an amount according to proof at trial.

148.    Defendant DOMINOIDS' failure to maintain accurate records of hours worked, falsification of hours worked, and failure to compensate all wages due at each appropriate time of payment to Plaintiff is either unfair and/or an offense punishable for each violation.

149.    Defendant's acts constitute a continuing and ongoing unfair and unlawful activity prohibited by California Business & Professions Code § 17200 *et. seq.*, and justify the issuance of an injunction, the making of restitution and the imposition of other equitable relief pursuant to California Business & Professions Code § 17203, both as to Defendant DOMINOIDS and its managing agents and officers.

150.    Plaintiff is informed and believes, and thereon alleges that Defendant DOMINOIDS instructed and directed its directors, officers, employees, and/or agents to intentionally and unlawfully fail to compensate all earned wages as a means of gaining an unfair advantage over Defendant DOMINOIDS'

competitors in violation of California Business & Professions Code § 17047. The advantage gained from violation of the Unfair Business Practices Act accrues, *inter alia*, in the form of a lower cost of conducting business and an increased margin of profit.

151.    The victims of these unfair and/or unlawful business practices include, but are not limited to, Plaintiff, competing businesses in the State of California, and the public. Plaintiff is informed and believes and thereon alleges that Defendant DOMINOIDS performed the aforementioned acts with the intent of gaining an unfair competitive advantage and thereby injuring Plaintiff, other competitors, and the public.

152.    All remedies for these violations are cumulative pursuant to California Business & Professions Code § 17205.

153.    As a direct and proximate result of Defendant DOMINOIDS' unfair and unlawful business practices, Plaintiff was harmed.

154.    Pursuant to California Business & Professions Code § 17203, Plaintiff seeks restitution and/or disgorgement of all wages wrongfully retained by Defendant DOMINOIDS in violation of California Business & Professions Code § 17000 *et. seq*. and § 17200 *et. seq*.

## NINTH CAUSE OF ACTION
### HOSTILE WORK ENVIRONMENT
### (Against All Defendants)

155.    Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

156.    Under California Government Code § 12923(a), "harassment creates a hostile, offensive, oppressive, or intimidating work environment and deprives

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

victims of their statutory right to work in a place free of discrimination when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being."

157.   Under California Government Code § 12923(a), "the plaintiff need not prove that his or her tangible productivity has declined as a result of the harassment. It suffices to prove that a reasonable person subjected to the discriminatory conduct would find, as the plaintiff did, that the harassment so altered working conditions as to make it more difficult to do the job."

158.   During Plaintiff's employment, and especially while employed at the National City DOMINOIDS location under Ms. Upton's management, Plaintiff was repeatedly harassed and subjected to a hostile work environment. At all times relevant hereto, management-level employees were the primary cause of the hostile work environment.

159.   When such hostile behaviors were adopted by other employees, management-level employees possessed reason to know of, or should have known of, such hostile behavior, and either failed, neglected, or refused to take prompt and appropriate remedial action to eradicate the unlawful conduct.

160.   Under *Harris v. Forklift Systems, Inc.,* "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include: (1) the frequency of the discriminatory conduct, (2) the severity of the discriminatory conduct, (3) whether it the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is relevant to determining whether the plaintiff actually found the environment abusive. But no single factor is

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

required." (*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).

161.   The harassment Plaintiff suffered on a daily basis included but is not limited to sexual harassment by Ms. Upton and Mr. Keener, demotions when Plaintiff requested transfer, reduction of Plaintiff's hours when Plaintiff attempted to enjoy mandatory meal break and/or rest periods as required by law, and reprimand as a result of refusing to clock out while still performing job duties.

162.   On one occasion, Plaintiff, Ms. Upton, and Mr. Herman were confined on a small food truck together. Mr. Herman repeatedly made comments regarding the bodies of female customers and bystanders. These comments included: "fuXX the things I would do to her," and "damn she has a fat aXX." These comments made Plaintiff extremely uncomfortable, as Mr. Herman's comments were wildly disrespectful and inappropriate. These comments were further made by Mr. Herman while working at an event for veterans. At this event, many of the women Mr. Herman made such disrespectful and inappropriate comments about, had either served in the military, were on active duty, or had husbands serving in the military. This conduct on the part of Mr. Herman, as Plaintiff's superior, appalled Plaintiff.

163.   On another occasion, Mr. Herman and Ms. Upton made repeated jokes regarding Ms. Upton's "twerking problem" ("twerking" being a dance characterized by sexually suggestive motions [e.g.: rapid, repeated hip thrusts and shaking of the buttocks, especially while squatting]). Upon discussing Ms. Upton's "twerking problem," Ms. Upton then began "twerking" in the small trailer, directly in front of Plaintiff's face and groin area, yet again making Plaintiff extremely uncomfortable.

164.   To further exacerbate Plaintiff's arduous circumstances, Plaintiff began receiving unwarranted threats and harassment from Ms. Upton. This

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

harassment from one of Plaintiff's superiors became so severe that Plaintiff's severely detrimental emotional state brought him to tears on a daily basis.

165.    On yet another occasion, Plaintiff encountered a verbal altercation with another employee, who in turn, threatened Plaintiff's life. On this occasion, Plaintiff was cutting pizza when Ms. Upton instructed one of the delivery drivers to take over Plaintiff's job cutting pizza so Plaintiff could do something else. Ms. Upton provided this instruction to the delivery driver, but not Plaintiff which greatly exacerbated the miscommunication that ensued. When the delivery driver approached Plaintiff, the delivery driver cornered Plaintiff, physically bumping into Plaintiff's shoulder. When Plaintiff requested the delivery driver "get off [him]," the delivery driver stated that he would "kill [Plaintiff]." The threats did not cease there, however, as the delivery driver later sent Plaintiff a photo of a gun via text message. This physical altercation and continued threats via text message made Plaintiff fear for his physical safety.

166.    Due to these threats to Plaintiff's life, Plaintiff was transferred to the Euclid Avenue DOMINOIDS, a location with bulletproof glass, to protect Plaintiff from the death threats he received at the National City DOMINOIDS.

167.    This unwarranted and harassing conduct occurred on a daily basis and was so severe that it significantly affected Plaintiff's well-being, as well as Plaintiff's physical sense of safety in the workplace.

168.    As a result of the harassing conduct Plaintiff was forced to endure, Plaintiff had no choice but to resign from his (four) 4-year employment with Defendant DOMINOIDS, foregoing any opportunity of career growth within the company.

169.    As a result of Defendant's conduct, Plaintiff was harmed.

170.    The acts and conduct of Defendants constitute "malice" (as that term is

defined in California Civil Code § 3294(c)(1), in that it was intended by Defendants to cause injury to Plaintiff or was despicable conduct which was carried on by the Defendants with a willful and conscious disregard of the rights or safety of Plaintiff. The acts of Defendants were conducted maliciously and oppressively and with the advance knowledge, conscious disregard, authorization, ratification or act of oppression, within the meaning of Civil Code § 3294. The actions and conduct of Defendants were intended to cause injury to Plaintiff, justifying an award of exemplary and punitive damages in an amount according to proof.

### TENTH CAUSE OF ACTION
### VIOLATION OF 29 U.S.C. § 654
### *Unsafe Working Conditions*
### Count One – Changing Expiration Dates
### (Against All Defendants)

171.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

172.   Under 29 U.S.C. § 654, an employer is obligated to provide employees with a workplace free from recognized hazards that are causing or likely to cause death or serious physical harm to such employees.

173.   Under California Labor Code § 6310(a)(4), no person shall discharge or in any manner discriminate against any employee because the employee has reported a work-related fatality, injury, or illness, requested access to occupational injury or illness reports and records that are made or maintained pursuant to Subchapter 1 (commencing with Section 14000) of Chapter 1 of Division 1 of Title 8 of the California Code of Regulations, or exercised any

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

other rights protected by the federal Occupational Safety and Health Act (29 U.S.C. § 651 *et. seq.*).

174.   Defendant DOMINOIDS was negligent in the maintenance of its stores and as a result, created and forced its employees to work in unsafe working conditions.

175.   Conditions in the store created an unreasonable risk of harm to Plaintiff and other employees.

176.   Defendant DOMINOIDS routinely instructed its employees to alter expiration dates on expired sauces until the sauce bottles were depleted. Defendant DOMINOIDS further instructed Plaintiff, as well as other employees, to alter expiration dates on meats and vegetables, and to use such meats and vegetables until they were depleted in order to avoid wasting food.

177.   Plaintiff, as well as other employees, was never informed of the true expiration dates of the sauces and were exposed to the hazards involved in using and touching expired food.

178.   Defendant DOMINOIDS knew or should have known about such unsafe working conditions and about the unreasonable risk of harm Defendant DOMINOIDS posed to its employees.

179.   Defendant DOMINOIDS failed to rectify these unsafe working conditions and to protect Plaintiff, as well as other employees, against harm from such unsafe conditions.

180.   As a result of Defendant's conduct, Plaintiff was harmed.

///

///

///

///

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

### TENTH CAUSE OF ACTION

### VIOLATION OF 29 U.S.C. § 654

### *Unsafe Working Conditions*

### Count Two – Rotting Vegetables

### (Against All Defendants)

181.  Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

182.  Under 29 U.S.C. § 654, an employer is obligated to provide employees with a workplace free from recognized hazards that are causing or likely to cause death or serious physical harm to such employees.

183.  Under California Labor Code § 6310(a)(4), no person shall discharge or in any manner discriminate against any employee because the employee has reported a work-related fatality, injury, or illness, requested access to occupational injury or illness reports and records that are made or maintained pursuant to Subchapter 1 (commencing with Section 14000) of Chapter 1 of Division 1 of Title 8 of the California Code of Regulations, or exercised any other rights protected by the federal Occupational Safety and Health Act (29 U.S.C. § 651 *et. seq.*).

184.  Defendant DOMINOIDS was negligent in the maintenance of its stores and as a result, created and forced its employees to work in unsafe working conditions.

185.  Conditions in the store created an unreasonable risk of harm to Plaintiff and other employees.

186.  Defendant DOMINOIDS instructed its employees to use decomposing/decomposed and moldy vegetables and to mix the decomposing/decomposed vegetables with the fresh vegetables. Plaintiff, for

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

example, was forced to use slime-covered and foul-smelling red peppers in the preparation of food for customers, and mix expired mushrooms with fresh mushrooms, simply to avoid "wasting food."

187.   Plaintiff, along with others, was exposed to the hazards of cooking and touching mold-infested, as well as vegetables in various states of decomposition on a regular basis.

188.   Defendant DOMINOIDS knew or should have known about such unsafe working conditions and about the unreasonable risk of harm Defendant DOMINOIDS posed to its employees.

189.   Defendant DOMINOIDS failed to rectify these unsafe working conditions and to protect Plaintiff, as well as other employees, against harm from such unsafe conditions.

190.   As a result of Defendant's conduct, Plaintiff was harmed.

**TENTH CAUSE OF ACTION**

**VIOLATION OF U.S.C. § 654**

***Unsafe Working Conditions***

**Count Three – Mold-Infested Bread**

**(Against All Defendants)**

191.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

192.   Under 29 U.S.C. § 654, an employer is obligated to provide employees with a workplace free from recognized hazards that are causing or likely to cause death or serious physical harm to such employees.

193.   Under California Labor Code § 6310(a)(4), no person shall discharge or in any manner discriminate against any employee because the employee has

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

reported a work-related fatality, injury, or illness, requested access to occupational injury or illness reports and records that are made or maintained pursuant to Subchapter 1 (commencing with Section 14000) of Chapter 1 of Division 1 of Title 8 of the California Code of Regulations, or exercised any other rights protected by the federal Occupational Safety and Health Act (29 U.S.C. § 651 *et. seq*.).

194. Defendant DOMINOIDS was negligent in the maintenance of its stores and as a result, created and forced its employees to work in unsafe working conditions.

195. Conditions in the store created an unreasonable risk of harm to Plaintiff and other employees.

196. Defendant DOMINOIDS instructed its employees to utilize bread for longer than one (1) day, even if the bread had become wet and soggy, which it frequently did.

197. Defendant DOMINOIDS further failed to properly store its bread, causing the bread to develop mold growth. Despite Defendants being aware of this situation, or should have been aware of this, Defendant DOMINOIDS forced Plaintiff, as well as other employees, to use the moldy bread in preparation of food for customers

198. As a result, Plaintiff was exposed to bacteria from the mold-infested bread and was subjected to the risks of touching and/or inhaling bacteria from the mold on a daily basis.

199. Defendant DOMINOIDS knew or should have known about such unsafe working conditions and about the unreasonable risk of harm Defendant DOMINOIDS posed to its employees.

200. Defendant DOMINOIDS failed to rectify these unsafe working conditions and to protect Plaintiff, as well as other employees, against harm from such

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

unsafe conditions.

201.   As a result of Defendant's conduct, Plaintiff was harmed.

### TENTH CAUSE OF ACTION

### VIOLATION OF U.S.C. § 654

### *Unsafe Working Conditions*

### Count Four – Unsanitary Cornmeal

### (Against All Defendants)

202.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

203.   Under 29 U.S.C. § 654, an employer is obligated to provide employees with a workplace free from recognized hazards that are causing or likely to cause death or serious physical harm to such employees.

204.   Under California Labor Code § 6310(a)(4), no person shall discharge or in any manner discriminate against any employee because the employee has reported a work-related fatality, injury, or illness, requested access to occupational injury or illness reports and records that are made or maintained pursuant to Subchapter 1 (commencing with Section 14000) of Chapter 1 of Division 1 of Title 8 of the California Code of Regulations, or exercised any other rights protected by the federal Occupational Safety and Health Act (29 U.S.C. § 651 *et. seq.*).

205.   Defendant DOMINOIDS was negligent in the maintenance of its stores and as a result, created and forced its employees to work in unsafe working conditions.

206.   Conditions in the store created an unreasonable risk of harm to Plaintiff and other employees.

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

207.   Defendant DOMINOIDS instructed its employees to place used cornmeal back in the bucket, thereby mixing the used cornmeal with fresh cornmeal, even though the used cornmeal was full of dry dough crumbs and sauce.

208.   On more than one occasion, Plaintiff was reprimanded for "wasting the cornmeal" when Plaintiff threw it away due to the fact the used cornmeal was full of dough crumbs and sauce and placing it back in the fresh cornmeal bucket would inevitably contaminate the fresh cornmeal.

209.   As a result, Plaintiff, as well as other employees, were exposed to touching unsanitary food and were forced to continue using such unsanitary food in the preparation of food for customers.

210.   Defendant DOMINOIDS knew or should have known about such unsafe working conditions and about the unreasonable risk of harm Defendant DOMINOIDS posed to its employees.

211.   Defendant DOMINOIDS failed to rectify these unsafe working conditions and to protect Plaintiff, as well as other employees, against harm from such unsafe conditions.

212.   As a result of Defendant's conduct, Plaintiff was harmed.

## TENTH CAUSE OF ACTION

### VIOLATION OF U.S.C. § 654

### *Unsafe Working Conditions*

### Count Five – Moldy Dough

### (Against All Defendants)

213.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

214.   Under 29 U.S.C. § 654, an employer is obligated to provide employees with

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

a workplace free from recognized hazards that are causing or likely to cause death or serious physical harm to such employees.

215.   Under California Labor Code § 6310(a)(4), no person shall discharge or in any manner discriminate against any employee because the employee has reported a work-related fatality, injury, or illness, requested access to occupational injury or illness reports and records that are made or maintained pursuant to Subchapter 1 (commencing with Section 14000) of Chapter 1 of Division 1 of Title 8 of the California Code of Regulations, or exercised any other rights protected by the federal Occupational Safety and Health Act (29 U.S.C. § 651 *et. seq.*).

216.   Defendant DOMINOIDS was negligent in the maintenance of its stores and as a result, created and forced its employees to work in unsafe working conditions.

217.   Conditions in the store created an unreasonable risk of harm to Plaintiff and other employees.

218.   Defendant DOMINOIDS instructed Plaintiff, as well as other employees, to keep uncooked pizza dough on the holding racks for up to five (5) hours, even though the standard sanitary protocol is to keep uncooked pizza dough on the holding rack for no more than fifteen (15) minutes.

219.   Defendant DOMINOIDS further instructed Plaintiff, as well as other employees, to leave the dough bites/twists/pans out longer than four (4) hours, as required by protocol, because the store "needed them for later:" This additional time the dough spent out in the open resulted in the dough becoming moldy.

220.   Despite the dough becoming moldy, Defendant DOMINOIDS required Plaintiff, as well as other employees, to use such moldy dough in the preparation of food for customers.

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

221.   Defendant DOMINOIDS yet again exposed Plaintiff, as well as other employees, to touching and working with moldy food.

222.   Defendant DOMINOIDS knew or should have known about such unsafe working conditions and about the unreasonable risk of harm Defendant DOMINOIDS posed to its employees.

223.   Defendant DOMINOIDS failed to rectify these unsafe working conditions and to protect Plaintiff, as well as other employees, against harm from such unsafe conditions.

224.   As a result of Defendant's conduct, Plaintiff was harmed.

## ELEVENTH CAUSE OF ACTION
### VIOLATION OF CAL. LAB. CODE § 1391 AND § 1392 AND CAL. EDUCATION CODE § 49112 AND § 49116
### (Against All Defendants)

225.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

226.   Under California Labor Code § 1391(a)(3), an employer is prohibited from employing a minor sixteen (16) or seventeen (17) years of age for more than eight (8) hours in one (1) day of twenty-four (24) hours or more than forty-eight (48) hours in one (1) week, or before five (5) a.m., or after ten (10) p.m. on any day preceding a school day.

227.   Under California Labor Code § 1391(a)(4), an employer is prohibited from employing a minor sixteen (16) or seventeen (17) years of age for more than four (4) hours in any school day.

228.   Under California Education Code § 49112(a), a permit may be issued to a minor who has completed seventh grade to work outside of school hours for a

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

period of time not to exceed four (4) hours in any day in which such minor is required by law to attend school when the minor is sixteen (16) or seventeen (17) years of age.

229.   Under California Education Code § 49112(c), a permit may be issued to a minor of age sixteen (16) years or older to work outside of school hours for a period of time not to exceed eight (8) hours in any day in which such minor is required by law to attend school and which is immediately prior to a non-school day.

230.   Under California Education Code § 49116, an employer is prohibited from employing a minor sixteen (16) or seventeen (17) years of age for more than four (4) hours in any day in which such minor is required by law to attend school for 240 minutes or more.

231.   At all times relevant herein, California Labor Code §§ 1391 and 1392, and California Education Code §§ 49112 and 49116 were applicable.

232.   When Plaintiff commenced employment with Defendant DOMINOIDS, Plaintiff was sixteen (16) years old. For the majority of Plaintiff's employment, and during the applicable limitations period, Plaintiff worked for Defendant DOMINOIDS while still a minor.

233.   Plaintiff was consistently forced by Defendant DOMINOIDS to work for more than eight (8) hours in one (1) day of twenty-four (24) hours or more than forty-eight (48) hours in one (1) week.

234.   Plaintiff was further routinely required to work past ten (10) p.m., and even on occasion, past two (2) a.m., on days preceding a school day.

235.   Defendant DOMINOIDS' requirement that Plaintiff work hours in excess of eight (8) hours per day and past ten (10) p.m. on days preceding a school day was a direct violation of California Labor Code §§ 1391 and 1392, as well as California Education Code §§ 49112 and 49116.

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

236.   Defendant DOMINOIDS approved, ordered, authorized, and/or ratified the conduct alleged herein.

237.   As a result of Defendant's conduct, Plaintiff was harmed.

## TWELFTH CAUSE OF ACTION
## RETALIATION IN VIOLATION OF PUBLIC POLICY
### (Against All Defendants)

238.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

239.   Under California Government Code § 12940(h), it is unlawful employment practice for any employer to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

240.   Under California Code of Regulations § 11021(a)(1), it is unlawful for an employer or other covered entity to demote, suspend, reduce, fail to hire or consider for hire, fail to give equal consideration in making employment decisions, fail to treat impartially in the context of any recommendations for subsequent employment that the employer or other covered entity may make, adversely affect working conditions or otherwise deny any employment benefit to an individual because that individual has opposed practices prohibited by the Act or has filed a complaint, testified, assisted or participated in any manner in an investigation, proceeding, or hearing conducted by the Council or Department or its staff.

241.   Under California Code of Regulations § 11021(a)(1)(C), opposition to practices prohibited by the Act includes, but is not limited to opposing

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

employment practices that an individual reasonably believes to exist and believes to be a violation of the Act.

242.   "To establish a prima facie case of retaliation, 'the Plaintiff must show that he engaged in a protected activity, their employer subjected them to adverse employment action, and there is a causal link between the protected activity and the employer's action.'" (*Iwekaogwu v. City of Los Angeles* (1999) 75 Cal.App.4th 803, 814 [quoting *Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 476].)

243.   Plaintiff is informed and believes, and thereon alleges that Defendant DOMINOIDS demoted Plaintiff in violation of public policy of the State of California. Plaintiff was demoted when he refused to be transferred back to the National City DOMINOIDS location, at which an employee threatened Plaintiff's life by physically bumping into Plaintiff, verbally threatening to kill Plaintiff, and further, sending Plaintiff a photo of a gun via text message. Many of the employees at the National City location maintained a close friendship with such individual, thereby posing an ongoing threat to Plaintiff. Defendant DOMINOIDS was at all times aware of this threat to Plaintiff's life and was aware of the severity of such threat, as Defendant DOMINOIDS immediately transferred Plaintiff to a location with bulletproof glass in the cashier station after Plaintiff received such threat. Defendant DOMINOIDS, however, sought to subsequently transfer Plaintiff back to the National City location, despite Defendant DOMINOIDS' knowledge of Plaintiff's previous encounter.

244.   When Plaintiff refused to be transferred to the National City location where Plaintiff believed his life to be in danger, and where Plaintiff was routinely verbally and sexually abused by the general manager, Defendant DOMINOIDS transferred Plaintiff to the Ocean Beach location, which involved a long commute for Plaintiff and where Plaintiff could not enhance

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

his position within Defendant's company, as transfer to the Ocean Beach location meant that Plaintiff would forego his position as Assistant Manager.

245.    Defendant DOMINOIDS was aware of Plaintiff's desire to become a manager yet failed to support Plaintiff, despite several promises to Plaintiff that Defendant DOMINOIDS would assist Plaintiff's career growth. Rather, Defendant DOMINOIDS assigned Plaintiff as acting manager in locations where there was no manager on-duty, forcing Plaintiff to take on managerial duties but failing to provide Plaintiff with the official title of General Manager as well as compensation provided to managers responsible for the duties Plaintiff was required to perform.

246.    Defendant DOMINOIDS retaliated against Plaintiff for expressing his concerns in transferring back to a location where Plaintiff's life was at risk by instead, transferring Plaintiff to a location where Plaintiff was prevented from professional growth and where Plaintiff was be unable to learn anything new implement Plaintiff's abilities in order to demonstrate his worth.

247.    These retaliatory acts on the part of Defendant DOMINOIDS were a direct violation of California Government Code § 12940(h).

248.    As a result of Defendant's conduct, Plaintiff was harmed.

249.    The acts and conduct of Defendants constitute "malice" (as that term is defined in California Civil Code § 3294(c)(1), in that it was intended by Defendants to cause injury to Plaintiff or was despicable conduct which was carried on by the Defendants with a willful and conscious disregard of the rights or safety of Plaintiff. The acts of Defendants were conducted maliciously and oppressively and with the advance knowledge, conscious disregard, authorization, ratification or act of oppression, within the meaning of Civil Code § 3294. The actions and conduct of Defendants were intended to cause injury to Plaintiff, justifying an award of exemplary and punitive

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

damages in an amount according to proof.

### THIRTEENTH CAUSE OF ACTION

### CONSTRUCTIVE TERMINATION

### (Against All Defendants)

250.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

251.   Defendant DOMINOIDS, acting through its ownership, agents, and other employees, either intentionally created or knowingly permitted working conditions that were so intolerable that a reasonable employer would have realized that a reasonable person in Plaintiff's position would have been compelled to resign. (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1251.)

252.   In order to establish a wrongful termination in violation of public policy, a plaintiff must show that the employer violated a policy that is: (a) enumerated in a constitutional, statutory, or regulatory provision of state or federal law, (b) "public" in the sense that it "inures to the benefit of the public" (rather than an individual interest), (c) well established at the time of the discharge, and (d) substantial and fundamental. (*Stevenson v. Superior Ct.* (1997) 16 Cal.4th 880, 894; *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 79.; *see also Rojo v. Kliger* (1990) 52 Cal.3d 65, 70-71 [holding that "the FEHA does not supplant other state laws, including claims under the common law, relating to employment discrimination; an employee need not exhaust the administrative process under the act before resort to judicial relief for non-statutory causes of action; and sex discrimination in employment may support a claim of tortious discharge in contravention of public policy."].)

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

253.   The ongoing occurrences caused by Defendant DOMINOIDS created working conditions so intolerable that Plaintiff had no choice but to resign. These intolerable conditions included, but were not limited to, requiring Plaintiff to forego meal breaks and/or rest periods yet forcing Plaintiff to clock-out while remaining on duty so as to create a record that Defendant DOMINOIDS abided by California labor law, subjecting Plaintiff to sexual harassment and verbal abuses by Plaintiff's superiors, and retaliating against Plaintiff for refusing to transfer back to the National City location, where an employee had previously threatened Plaintiff's life.

254.   As a high school student, Plaintiff remained dedicated and committed to his job with Defendant DOMINOIDS, as Plaintiff was a hardworking individual who wished to grow his career within the company. Defendant DOMINOIDS promised to provide Plaintiff adequate time to meet his school needs, so Plaintiff would have the opportunity to excel in his academics and possess the ability to earn a potential scholarship that would allow Plaintiff to attend college. Despite the fact that Plaintiff routinely dedicated a majority of his time to Defendant DOMINOIDS, Defendant DOMINOIDS lacked the same respect for Plaintiff. Plaintiff was routinely forced to work overtime hours that severely impacted Plaintiff's ability to adequately perform his schoolwork.

255.   Defendant DOMINOIDS further created intolerable working conditions by refusing to acknowledge Plaintiff's contribution to the MCRD location. Shortly after Plaintiff was transferred to the MCRD location, Ms. Rihanan, the General Manager, embarked on medical leave. As a result, Plaintiff was forced to take on managerial duties. At all times, Defendant DOMINOIDS was fully aware that Plaintiff was performing such managerial duties in Ms. Rihanan's absence, yet at no time did Plaintiff receive any recognition in the form of a formal job title, promotion, or correlative compensation such managerial work

merited.

256.   Additionally, while exercising such managerial duties, the MCRD location
received a (four) 4-star review. Per Defendant DOMINOIDS' company policy,
obtaining this (four) 4-star review should have entitled Plaintiff to a $300
bonus, as Plaintiff was the acting manager of the MCRD location. Plaintiff
however, received no such bonus.

257.   As a result of the intolerable work conditions Plaintiff was forced to endure
for approximately four (4) years, Plaintiff suffered severe anxiety and
depression.

258.   Plaintiff is informed and believes, and thereon alleges that Defendant
DOMINOIDS possessed actual knowledge of, and created, such intolerable
working conditions, through its managers, supervisors, and/or agents.
Defendant DOMINOIDS knew or should have known that such conditions
would have a substantial negative impact on Plaintiff.

259.   These working conditions were so intolerable that Plaintiff possessed no
viable alternative other than to resign.

260.   In March 2020, Plaintiff resigned as a result of such intolerable conditions.

261.   As a result of this tortious, constructive termination, Plaintiff sustained
sizable losses in earnings and other employment benefits according to proof.

262.   Plaintiff further suffered severe emotional distress caused by this substantial
loss of income and forced involvement in the aforementioned wrongful
conduct of Defendant DOMINOIDS.

263.   As a result of Defendant's conduct, Plaintiff was harmed.

264.   Accordingly, Plaintiff seeks all interest, fees, attorneys' fees, and civil
penalties to which he is entitled at law.

265.   The acts and conduct of Defendants constitute "malice" (as that term is
defined in California Civil Code § 3294(c)(1), in that it was intended by

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

Defendants to cause injury to Plaintiff or was despicable conduct which was carried on by the Defendants with a willful and conscious disregard of the rights or safety of Plaintiff. The acts of Defendants were conducted maliciously and oppressively and with the advance knowledge, conscious disregard, authorization, ratification or act of oppression, within the meaning of Civil Code § 3294. The actions and conduct of Defendants were intended to cause injury to Plaintiff, justifying an award of exemplary and punitive damages in an amount according to proof.

## FOURTEENTH CAUSE OF ACTION
### VIOLATION OF CAL. LAB. CODE § 201 AND § 202
### *Failure To Compensate All Wages Due to Discharged or Quitting Employees*
### (Against All Defendants)

266.    Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

267.    California Labor Code §§ 201 and 202 provide that if an employer discharges an employee, the wages earned are due and payable immediately. If that person voluntarily leaves the employ, they are due no later than seventy-two (72) hours after the employee's leave.

268.    Plaintiff resigned from his employment with Defendant DOMINOIDS in March 2020.

269.    Upon Plaintiff's resignation, Defendant DOMINOIDS failed to and continues to fail to compensate Plaintiff for all wages owed to Plaintiff. Defendant DOMINOIDS is thus in violation of California Labor Code §§ 201 and 202.

270.    California Labor Code § 203 provides that if an employer willfully fails to

compensate wages owed, the wages of that employee continue as a penalty wage from the due date at the same rate of pay until compensated, or until an action is commenced, but they shall not continue for more than thirty (30) days. Plaintiff is therefore entitled to recover (thirty) 30-days' worth of wages.

271.   At no time did Plaintiff receive the overtime wages and bonuses he was promised and earned accordingly with the last paycheck provided to Plaintiff. According to calculation, Defendant owes Plaintiff approximately $8,000 for compensated bonuses and overtime hours.

272.   As a result of Defendant's conduct, Plaintiff was harmed.

273.   Plaintiff seeks and is entitled to all waiting time penalties, interest, attorneys' fees, costs, damages, and other related remedies in an amount to be shown according to proof.

## FIFTEENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

274.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

275.   Defendant's conduct as thoroughly alleged above was extreme and outrageous. The conduct of Defendant DOMINOIDS amounted to intentional infliction of emotional distress, which was intended to and/or was committed in conscious disregard of the probability of causing Plaintiff to suffer severe emotional distress.

276.   Defendant DOMINOIDS' outrageous conduct includes but is not limited to its rampant violations of the California Labor Code in failing to provide Plaintiff with mandatory meal breaks and/or rest periods as required by law.

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

277.   Defendant DOMINOIDS, through its agents and employees further intentionally and willfully verbally abused Plaintiff on a consistent basis throughout the course of Plaintiff's employment. Plaintiff was forced to work in an environment in which he was subjected to inappropriate and suggestive comments by Plaintiff's superiors, as well as an environment in which another employee went so far as to threaten Plaintiff's life.

278.   The outrageous conduct of Defendants DOMINOIDS was further exacerbated by the fact that Plaintiff, who was a minor for the majority of his employment with Defendant DOMINOIDS, was routinely forced to work overtime hours and often required to stay at the shop until two (2) a.m. on nights preceding school days. This severely impacted Plaintiff's ability to focus on his academic and obtain a college scholarship, as Plaintiff dedicated most of his time to Defendant DOMINOIDS.

279.   When Plaintiff took on managerial responsibilities at the MCRD location due to the absence of Ms. Rihanan, Plaintiff's additional responsibilities were recognized by Defendant DOMINOIDS, yet at no time was Plaintiff provided a formal title nor the compensation of a General Manager.

280.   As a result of Defendant DOMINOIDS' extreme and outrageous conduct, Plaintiff lost the opportunity to focus on his academics and therefore, was unable to obtain a scholarship to attend college.

281.   As a direct and proximate result of the Defendants' unlawful employment practices, Plaintiff has suffered noneconomic damages including but not limited to stress, anxiety, loss of sleep, and depression.

282.   In doing the acts herein alleged, including preventing Plaintiff from exercising his ability to earn a living, realizing the fruits of his labor, and benefitting his future academics, the conduct of Defendant DOMINOIDS was malicious, intentional, and willfully calculated to cause injury to Plaintiff.

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

283. As a result of Defendant's conduct, Plaintiff was harmed.

284.    The acts and conduct of Defendants constitute "malice" (as that term is defined in California Civil Code § 3294(c)(1), in that it was intended by Defendants to cause injury to Plaintiff or was despicable conduct which was carried on by the Defendants with a willful and conscious disregard of the rights or safety of Plaintiff. The acts of Defendants were conducted maliciously and oppressively and with the advance knowledge, conscious disregard, authorization, ratification or act of oppression, within the meaning of Civil Code § 3294. The actions and conduct of Defendants were intended to cause injury to Plaintiff, justifying an award of exemplary and punitive damages in an amount according to proof.

## SIXTEENTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Count One – Failure to Provide Meal Breaks and Rest Periods
### (Against All Defendants)

285. Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

286. To prove a claim of negligent infliction of emotional distress, a plaintiff must show that: (1) the defendant engaged in negligent conduct, (2) the plaintiff suffered severe emotional distress, and (3) the defendant's negligent conduct was a result of the plaintiff's severe emotional distress. (*Hall v. Apollo Grp., Inc.*, 14-CV-01404-LHK, 2014 WL 4354420, at *6 (N.D. Cal. Sept. 2, 2014.)

287. The plaintiff's emotional distress must arise out of the defendant's breach of duty and must cause the plaintiff some physical injury. (*Id.*)

288.   Defendant DOMINOIDS possessed a duty to refrain from creating a foreseeable risk of physical injury to Plaintiff by causing Plaintiff such severe emotional distress that manifests in physical symptoms.

289.   Defendant DOMINOIDS breached that duty by failing to provide Plaintiff with meal breaks and/or rest periods while requiring Plaintiff to work shifts in excess of eight (8) hours per day and in excess of forty (40) hours per week.

290.   Throughout approximately four (4) years of employment, Plaintiff was required to clock out while remaining on-call and performing job duties, due to Defendant DOMINOIDS' understaffing.

291.   It was reasonably foreseeable that breach of this duty would result in Plaintiff suffering extreme emotional harm, manifesting in severe stress, anxiety, loss of sleep, and depression.

292.   As a direct and proximate result of Defendant DOMINOIDS' unlawful employment practices, Plaintiff has suffered noneconomic damages, including but not limited to stress, anxiety, loss of sleep, and depression.

293.   In March 2020, the working conditions Plaintiff was forced to endure on a daily basis became so intolerable that Plaintiff had no choice but to resign.

294.   As a result of the endless demands from Defendant DOMINOIDS, Plaintiff suffered and continues to suffer severe stress and anxiety. Such severe emotional distress has greatly affected Plaintiff's ability to sleep.

295.   But for Defendants DOMINOIDS' failure to observe and execute such duty, Plaintiff would not have suffered such harm, manifesting in stress, anxiety, loss of sleep, and depression.

296.   The acts and conduct of Defendants constitute "malice" (as that term is defined in California Civil Code § 3294(c)(1), in that it was intended by Defendants to cause injury to Plaintiff or was despicable conduct which was carried on by the Defendants with a willful and conscious disregard of the

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

rights or safety of Plaintiff. The acts of Defendants were conducted maliciously and oppressively and with the advance knowledge, conscious disregard, authorization, ratification or act of oppression, within the meaning of Civil Code § 3294. The actions and conduct of Defendants were intended to cause injury to Plaintiff, justifying an award of exemplary and punitive damages in an amount according to proof.

### SIXTEENTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Count Two – Harassment
### (Against All Defendants)

297.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all Paragraphs of this Complaint as though fully set forth within this Cause of Action.

298.   To prove a claim of negligent infliction of emotional distress, a plaintiff must show that: (1) the defendant engaged in negligent conduct, (2) the plaintiff suffered severe emotional distress, and (3) the defendant's negligent conduct was a result of the plaintiff's severe emotional distress. (*Hall v. Apollo Grp., Inc.*, 14-CV-01404-LHK, 2014 WL 4354420, at *6 (N.D. Cal. Sept. 2, 2014.)

299.   The plaintiff's emotional distress must arise out of the defendant's breach of duty and must cause the plaintiff some physical injury. (*Id.*)

300.   Defendant DOMINOIDS possessed a duty to refrain from creating a foreseeable risk of physical injury to Plaintiff by causing Plaintiff such severe emotional distress that manifests in physical symptoms.

301.   Defendant DOMINOIDS breached that duty by failing to properly address the abuses, harassment, death threats, and a hostile work environment so

25

intolerable that caused Plaintiff stress, anxiety, loss of sleep, and depression.

302.   The harassment Plaintiff suffered on a daily basis included but is not limited to sexual harassment by Ms. Upton and Mr. Keener, demotions when Plaintiff requested transfer, reduction of Plaintiff's hours when Plaintiff attempted to take mandatory meal break and/or rest periods as required by law, and reprimand as a result of refusing to clock out while still performing job duties.

303.   On one occasion, Plaintiff, Ms. Upton, and Mr. Herman were confined on a small food truck together. Mr. Herman repeatedly made comments regarding the bodies of female customers and bystanders. These comments included: "fuXX the things I would do to her," and "damn she has a fat aXX." This made Plaintiff extremely uncomfortable, as Mr. Herman's comments were wildly disrespectful and inappropriate. These comments were further made by Mr. Herman while working at an event for veterans. At this event, many of the women Mr. Herman made such disrespectful and inappropriate comments about, had either served in the military, were on active duty, or had husbands serving in the military. This conduct on the part of Mr. Herman, as Plaintiff's superior, appalled Plaintiff.

304.   On another occasion, Mr. Herman and Ms. Upton made repeated jokes regarding Ms. Upton's "twerking problem" ("twerking" being a dance characterized by sexually suggestive motions [e.g.: rapid, repeated hip thrusts and shaking of the buttocks, especially while squatting]). Upon discussing Ms. Upton's "twerking problem," Ms. Upton then began "twerking" in the small trailer, directly in front of Plaintiff's face and groin area, yet again making Plaintiff extremely uncomfortable.

305.   To further exacerbate Plaintiff's arduous circumstances, Plaintiff began receiving unwarranted threats and harassment from Ms. Upton. This

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

harassment from one of Plaintiff's superiors became so severe that Plaintiff's severely detrimental emotional state brought him to tears on a daily basis.

306.    On yet another occasion, Plaintiff encountered a verbal altercation with another employee, who in turn, threatened Plaintiff's life by threatening to kill Plaintiff and then sending Plaintiff a picture of a gun via text message. Due to these threats to Plaintiff's life, Plaintiff was transferred to the Euclid Avenue DOMINOIDS, a location with bulletproof glass, to protect Plaintiff from the death threats he received at the National City DOMINOIDS.

307.    This unwarranted and harassing conduct occurred on a daily basis and was so severe that it significantly affected Plaintiff's well-being, as well as Plaintiff's physical sense of safety in the workplace.

308.    It was reasonably foreseeable that breach of this duty would result in Plaintiff suffering extreme emotional harm, manifesting in severe stress, anxiety, loss of sleep, and depression.

309.    As a direct and proximate result of Defendant DOMINOIDS' failure to prevent harassment as to Plaintiff, Plaintiff has suffered noneconomic damages, including but not limited to stress, anxiety, loss of sleep, and depression.

310.    In March 2020, the harassment Plaintiff was forced to endure on a daily basis became so intolerable that Plaintiff had no choice but to resign.

311.    As a result of the endless demands from Defendant DOMINOIDS, Plaintiff suffered and continues to suffer severe stress and anxiety. Such severe emotional distress has greatly affected Plaintiff's ability to sleep.

312.    But for Defendants DOMINOIDS' failure to observe and execute such duty, Plaintiff would not have suffered such harm, manifesting in stress, anxiety, loss of sleep, and depression.

313.    The acts and conduct of Defendants constitute "malice" (as that term is

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

defined in California Civil Code § 3294(c)(1), in that it was intended by Defendants to cause injury to Plaintiff or was despicable conduct which was carried on by the Defendants with a willful and conscious disregard of the rights or safety of Plaintiff. The acts of Defendants were conducted maliciously and oppressively and with the advance knowledge, conscious disregard, authorization, ratification or act of oppression, within the meaning of Civil Code § 3294. The actions and conduct of Defendants were intended to cause injury to Plaintiff, justifying an award of exemplary and punitive damages in an amount according to proof.

## **PRAYER**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For compensatory and special damages according to proof at the time of trial;

2. For general damages according to proof at the time of trial;

3. For punitive and exemplary damages where allowed by law;

5. For prejudgment interest;

6. For attorneys' fees pursuant to the applicable statutes; and,

7. For such other and further relief as the Court may deem just and proper.

Dated: August 20, 2021                     **SAN DIEGO BIZ LAW, APC**

By: /s/ Stefano Riznyk
Stefano Riznyk, Esq.
Madeline Baker, Esq.
Attorneys for Plaintiff

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff hereby demands a trial by jury on all issues so triable.

3

4

5   Dated: August 20, 2021                               **SAN DIEGO BIZ LAW, APC**

6

7

8                                                    By: /s/ Stefano Riznyk

9                                                    Stefano Riznyk, Esq.
                                                     Madeline Baker, Esq.
10                                                   Attorneys for Plaintiff

11

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

**FILER'S ECF ATTESTATION**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court of the Southern District of California, I certify that authorization for the filing or lodging of this document has been obtained from each of the other signatories shown above and that all signatories have authorized placement of their electronic signature on this document.

Dated: August 20, 2021                           By: /s/ Madeline Baker
                                                                  Attorney for Plaintiff
                                                                  Email: counsel@sandiegobizlaw.com

# VERIFICATION

UNITED STATES DISTRICT COURT    )

) ss.

SOUTHERN DISTRICT OF CALIFORNIA)


    I, **LEONARD NORMAN HOAR V**, am a Plaintiff to this action, and hereby state that I have read the foregoing **VERIFIED COMPLAINT** and know its contents. The matters stated in it are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    EXECUTED this __5__ day of August, 2021 in San Diego, California.

DocuSigned by:

_____
7DE6BABEEC454A7...
Leonard Norman Hoar V

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933